IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

QUINTUS BELTON,
     Petitioner,

vs.                                                                  Case No. 5:09cv209/RH/EMT

KENNETH S. TUCKER,[1]
     Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 14).  Petitioner filed a reply (doc. 17).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record (*see* doc. 14).[2]  Petitioner was charged in the Circuit Court in and for Bay County, Florida, Case No. 04-577, with one count of possession of cocaine with

---

     [1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

     [2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 14).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

intent to distribute (Count I), one count of possession of cannabis (more than twenty grams) with intent to sell or deliver (Count II), and one count of misdemeanor possession of drug paraphernalia (Count III) (doc. 1 at 1; doc. 14, Ex. B at 19–20).  Petitioner's first jury trial resulted in a mistrial (*see* Ex. B at 42).  Following a re-trial on November 1, 2005, he was found guilty of possession of cocaine, possession of more than twenty grams of cannabis, and possession of drug paraphernalia (*id.* at 54–55, Ex. E).  He was sentenced on December 1, 2005, to a term of five (5) years of imprisonment on Count I, with presentence credit of 232 days, a consecutive term of two (2) years of imprisonment followed by a term of three (3) years of probation on Count II, and time served on Count III (*see* doc. 1 at 6; doc. 14, Ex. B at 59–65, Ex. D).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-5883 (Ex. B at 82).  Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. F). Petitioner filed a pro se initial brief (Ex. G).  The First DCA affirmed the judgment per curiam without written opinion on February 6, 2007, with the mandate issuing March 6, 2007 (Exs. I, J.). <u>Belton v. State</u>, 949 So. 2d 201 (Fla. 1st DCA 2007) (Table).  Petitioner did not seek further review.

On April 25, 2008, Petitioner, through counsel, filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K at 1–22).  On August 26, 2008, the state circuit court summarily denied the motion (*id.* at 15–17).  Petitioner appealed the decision to the First DCA, Case No. 1D08-4807 (*id.* at 107, Ex. L).  The First DCA affirmed the decision per curiam without written opinion on February 11, 2009, with the mandate issuing March 10, 2009 (Exs. M, N).  <u>Belton v. State</u>, 3 So. 3d 319 (Fla. 1st DCA 2009) (Table).

On March 6, 2009, Petitioner filed a petition alleging ineffective assistance of appellate counsel in the First DCA, Case No. 1D09-1110 (Exs. O, S).  The First DCA denied the petition on the merits on March 27, 2009 (Ex. P).  The court denied Petitioner's motion for rehearing on June 11, 2009 (Ex. R).  <u>Belton v. State</u>, 10 So. 3d 1105 (Fla. 1st DCA 2009).

Petitioner filed the instant federal habeas action on June 15, 2009 (doc. 1).  Respondent concedes the petition is timely (doc. 14 at 5–6).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the

governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786).   Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at * 18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In

---

[4]Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
          (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250

F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

    To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

    Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

    A.    Ground One:  "Counsel was ineffective for not investigating witness and participating in the discovery process."

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner states defense counsel failed to investigate two witnesses, Christian Belton and Netfa Young,[8] who would have assisted the defense by providing information which would have supported a motion to suppress or a motion to dismiss (doc. 1 at 5, 6–11).[9]  Petitioner contends the testimony of Young and Belton would have been critical to the issue of whether law enforcement searched his home <u>before</u> they obtained a search warrant (*id.* at 6–11).  Petitioner states Deputy Duncan testified the search was conducted on February 13, 2004, three or four hours after Petitioner left his residence and was arrested (Ex. E at 35).  However, Christian Belton was present when Petitioner was arrested and would have testified that Petitioner was stopped and arrested by law enforcement at approximately 9:30 a.m. on February 13, 2004 (doc. 1 at 6–11).  Petitioner states Christian Belton would have testified that he went to Petitioner's residence at 9:45 a.m., shortly after Petitioner's arrest, and a police officer standing at the front door told him that no one could enter the house because officers were waiting for a search warrant (*id.*).  Petitioner states Christian Belton would have testified that he then called his cousin, Netfa Young, and asked Young to come to Petitioner's residence (*id.*).  Petitioner asserts Netfa Young would have testified that law enforcement officers were in Petitioner's residence conducting a search at approximately 10:30 a.m. (*id.*).  Petitioner states Young would testified he walked into the open door of Petitioner's residence and witnessed officers coming out of one of Petitioner's rooms with bags in their hands (*id.*).  Petitioner states Young would have testified that the officers told him to shut up and sit on the couch (*id.*).  Young allegedly would have testified that Christian Belton joined him in the residence shortly thereafter, and the officers told him to do the same (*id.*).

Petitioner argues the testimony of Mr. Young and Mr. Belton would have cast doubt on the credibility of Deputy Duncan and Investigator Walker, because Deputy Duncan testified Christian Belton was the only person who came to the house during the search (although he acknowledged others may have been outside), and Investigator Walker testified no one came to the house while the

---

[8] Petitioner spells this person's name differently in his petition and reply brief.  In his petition, he spells it "Netfa" (doc. 1 at 6, 8), but in his reply, he spells it "Nefta" (doc. 1, 4, 5).  The court will use the spelling that appears in the petition.

[9] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

search warrant was being executed (Ex. E at 33, 44).  Petitioner additionally states Christian Belton would have refuted Deputy Duncan's statement that upon Petitioner's arrest, Petitioner told him he had marijuana in a safe at his home (*see* Ex. B at 1–2; doc. 1 at 6–11).  Petitioner contends if defense counsel had interviewed or deposed Belton and Young, she would have obtained evidence to support a motion to suppress the contraband seized during the search, and the charges would have been dropped (doc. 1 at 6–11).

Respondent asserts Petitioner raised a related claim in his Rule 3.850 motion but did not allege the same factual basis for the claim (doc. 14 at 14–15).  Respondent asserts in the state proceedings, Petitioner alleged only that Mr. Young and Mr. Belton would have testified he (Petitioner) was not arrested on his premises, and his premises was searched without a warrant (*id.* at 15).  Petitioner did not allege Mr. Belton would have testified Petitioner never told police about marijuana in his home; therefore, that aspect of Petitioner's ineffective assistance of counsel claim was not exhausted and is procedurally defaulted from federal review (*id.*).  As to the exhausted part of the claim, Respondent contends Petitioner failed to show counsel performed deficiently by failing to interview or depose Young or Belton (*id.* at 15–16).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[10]

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

### 2.     Federal Review of State Court Decision

In Ground One of Petitioner's Rule 3.850 motion, Petitioner faulted counsel for failing to interview or depose Christian Belton and Netfa Young (Ex. K at 8–11).  He asserted if defense counsel had interviewed these witnesses, they would have stated: (1) Petitioner was arrested outside his residence, (2) law enforcement was refused entry to Petitioner's residence without a search warrant, and (3) law enforcement entered and searched the residence without a warrant (*id.*). Petitioner contended this proposed testimony would have provided grounds for a motion to suppress the contraband found in his residence (*id.*).

In the written order denying Petitioner's post-conviction motion, the state circuit court correctly identified the Strickland standard as the controlling legal standard (Ex. K at 72).  The state circuit court found as fact that a warrant was obtained and executed at Petitioner's residence later in the day on February 13, 2004 (*id.*).  The court also found that the trial testimony showed that no one was in the home at the time the warrant was executed (*id.*).  The court determined that a motion to suppress based upon Petitioner's allegations would have been denied  (*id.*).  Therefore, defense counsel was not ineffective for failing to file any such meritless motion (*id.*).

Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Assuming, without deciding, that Petitioner fully exhausted this claim, he is not entitled to federal habeas relief.  Petitioner presented no factual support for his assertions as to the content of Mr. Young or Mr. Belton's proposed testimony or their availability to testify at a suppression hearing. Petitioner's speculation on these matters is insufficient to demonstrate that counsel's failure to interview or depose these witness and present their testimony at a suppression hearing was unreasonable.  Petitioner's unsupported assertions are likewise insufficient to demonstrate a reasonable probability that a motion to suppress would have been granted and/or the charges dismissed had counsel investigated these witnesses.  Having failed to show deficient performance by counsel or prejudice resulting therefrom, Petitioner is not entitled to federal habeas relief on this claim.

B.      Ground Two:  "Counsel was ineffective for failing to file suppression motion."

Petitioner states defense counsel was ineffective for failing to file a motion to suppress or motion to dismiss the charges on the ground that the State failed to establish his exclusive possession and control of the contraband found in the home he shared with his wife, which is required to establish the possession element of each of the crimes of which he was convicted (doc. 1 at 5, 12–14).

Respondent concedes Petitioner exhausted his claim by presenting it in the Rule 3.850 proceedings (doc. 14 at 16).  Respondent contends Petitioner's claim is without merit, because under Florida law, evidence seized pursuant to a search warrant may not be suppressed on the ground that the contraband may have belonged to another legal occupant of the premises; rather, the question of exclusive possession is one for the jury (*id.* at 16–17) (citing State v. Ladrig, 707 So. 2d 819, 820 (Fla. 2d DCA 1998)).  Respondent argues inasmuch as a motion to suppress would have been denied, and inasmuch as trial counsel argued to the jury the Petitioner did not have exclusive possession of the contraband, counsel's performance was not deficient (*id.*).  Moreover, Petitioner was not prejudiced by counsel's failure to file a motion to suppress, because it would not have been successful (*id.* at 17).

1.      Clearly Established Federal Law

The clearly established federal standard for evaluating claims of ineffective assistance of counsel is the Strickland standard set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Ground Two in his Rule 3.850 motion (Ex. K at 11–14).  The state circuit court determined that under Florida law, the issue of whether contraband was in the exclusive possession of the defendant is a question for the jury and not properly the subject of a motion to suppress or a motion to dismiss (*id.* at 72 (citing State v. Giralt, 871 So. 2d 983 (Fla. 3d DCA 2004); State v. Odom, 862 So. 2d 56 (Fla. 2d DCA 2003); State v. Duran, 550 So. 2d 45 (Fla. 3d DCA 1989))).  Therefore, a motion to suppress would have been denied if counsel had filed one (*id.*).  Additionally, the state court found that defense counsel raised the issue of exclusive possession at trial in a motion for judgment of acquittal, but the trial court denied the motion (*id.*).  The court further found that defense counsel vigorously argued the issue of possession during closing argument  (*id.*).  The court concluded that because the issue was raised at trial and rejected by the jury, Petitioner failed to show he was prejudiced by counsel's failure to file a pre-trial motion to suppress or motion to dismiss (*id.*).

This federal court must abide by the state court's interpretation of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Carrizales v. Wainwright, 699 F.2d 1053, 1055

(11th Cir. 1983).  Under Florida law, whether a defendant had knowledge and control of contraband is a question for the jury, as is the question of whether a defendant was in "exclusive possession" of the premises where contraband was discovered.  *See* Giralt, Odom, Duran, *supra*.  Therefore, this court is bound by the state court's determination that under Florida law, the issue of whether the contraband was in Petitioner's exclusive possession was a question for the jury and not properly the subject of a motion to suppress or a motion to dismiss.  In light of the state court's interpretation of Florida law, Petitioner failed to show either deficient performance by counsel or that he was prejudiced by counsel's failure to file a motion to suppress or motion to dismiss based upon the possession issue.

Additionally, the state court's factual findings regarding defense counsel's arguing the possession issue in a motion for judgment of acquittal and to the jury during closing argument are supported by the trial transcript (Ex. C at 45–46, 52–56, 62–67).  The record thus demonstrates defense counsel raised and argued the issue of possession at the proper time and in the proper manner.  Petitioner failed to demonstrate that the state court's denial of  his claim was an unreasonable application of Strickland.  Therefore, he is not entitled to relief.

C.      Ground Three:  "Counsel was ineffective for failing to recuse himself."

Petitioner argues defense counsel should have withdrawn from his case or set a hearing on his pro se "Motion Dismissing Trial Counsel" (doc. 1 at 15–17).  Petitioner states he filed a motion to discharge the public defender's office and to appoint "private special counsel" on July 25, 2005, based upon counsel's failure to assert Petitioner's speedy trial rights, failure to meet with Petitioner or return phone calls from his family, and failure to depose police officers and other witnesses, including Christian Belton and Netfa Young (*id.* at 16–17, Ex. C).  Petitioner concedes a "dismissal hearing" was held on his motion to discharge counsel (*see id.* at 16), but he contends the judge failed to conduct an adequate inquiry into his allegations, nor did the court conduct a Faretta hearing;[11] instead, the court merely asked Petitioner whether he wished to represent himself (*id.*).  Petitioner

_____

[11] Faretta v. California, 422 U.S. 806 (1975)

contends an actual conflict of interest arose when he filed the motion to dismiss counsel, and defense counsel should have either withdrawn from the case based upon that conflict or asked the court to hold a hearing on the merits of Petitioner's allegations of ineffectiveness (*id.* at 16–17).

Respondent contends Petitioner failed to exhaust this claim (doc. 14 at 17–18).  Respondent states Petitioner fairly presented a claim of ineffective assistance of counsel based upon counsel's failure to schedule a hearing on Petitioner's motion to dismiss counsel.  However, Petitioner did not present a claim that counsel failed to ensure that the correct kind of hearing was held; nor did he present a claim that he was never provided a <u>Faretta</u> hearing (*id.* at 18).  As to the exhausted claim (counsel's failure to schedule a hearing), Respondent contends the claim is without merit, because the record demonstrates Petitioner was provided a hearing on his motion (*id.*).

In Petitioner's reply, he appears to concede that a "dismissal hearing" was held in state court (doc. 17 at 8–10).  However, he contends the hearing was inadequate because the trial court inquired only as to whether he wished to represent himself.  The court did not inquire as to the validity of his allegations of ineffective assistance or ask whether he wanted a different attorney, and the court did not hold a <u>Faretta</u> hearing (*id.*).

Upon review of the state court record, the undersigned concludes that the only claim fairly presented to the state court was Petitioner's claim that counsel failed to either withdraw due to the conflict of interest created by Petitioner's filing the motion, or schedule a hearing on his motion (*see* Ex. K at 15–16).  Petitioner did not fairly present a claim that counsel failed to ensure that the hearing complied with the requirements of state and federal law; nor did Petitioner fairly present a claim regarding the court's failure to conduct a <u>Faretta</u> hearing.[12]  Therefore, only the former claim was exhausted, that is, counsel's failure to either withdraw due to the conflict of interest created by Petitioner's filing the motion, or schedule a hearing on Petitioner's motion.

      1.      Clearly Established Federal Law

---

[12] Although Petitioner argued on direct appeal that the trial court erred by failing to conduct an inquiry into his allegations of ineffective assistance of counsel, he presented the issue as solely a matter of state law (*see* Ex. G).  He argued the trial court failed to follow the procedure outlined in <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973), which is the procedure adopted and followed by the Florida courts in cases where, before the commencement of trial, the defendant moves to discharge appointed counsel (*see id.* (citing <u>Nelson</u> and Florida cases applying <u>Nelson</u>)).  Petitioner did not present a federal basis for his claim or cite a federal source of law in conjunction with his claim.

As discussed *supra*, the Strickland standard is the clearly established standard for evaluating claims of ineffective assistance of counsel.  However, there is a limited presumption of prejudice where counsel has an actual conflict of interest.  Strickland, 466 U.S. at 691 (citing Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)).  This presumption, which requires automatic reversal of a conviction, applies only where an attorney is forced to represent co-defendants over his own objection, unless the court has found no conflict.  Mickens v. Taylor, 535 U.S. 162, 167–68, 122 S. Ct. 1237, 1241–42, 152 L. Ed. 2d 291 (2002) (discussing Holloway v. Arkansas, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)).  The Mickens Court noted that while the Courts of Appeals had "unblinkingly" applied Sullivan to all kinds of purported ethical conflicts: "[T]he language of Sullivan itself does not clearly establish, or indeed even support, such expansive application.  '[U]ntil,' it said, 'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'"  Mickens, 535 U.S. at 175 (quoting Sullivan with added emphasis, other citations omitted).  Thus, the Eleventh Circuit held that Supreme Court precedent does <u>not</u> clearly establish that the Sullivan rule of presumed prejudice applies in other conflict situations, that is, outside concurrent, multiple representation circumstances.  *See* Schwab v. Crosby, 451 F.3d 1308, 1324–25, 1327–28 (11th Cir. 2006).  In conflict situations where prejudice is not presumed, a petitioner must demonstrate that an adverse effect on counsel's performance flowed from the conflict of interest.  *See* Hunter v. Sec'y Dep't of Corr., 395 F.3d 1196, 1201–02 (11th Cir. 2005); Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1357–58 (11th Cir. 2005).

2.      Federal Review of State Court Decision

In Ground Three of Petitioner's Rule 3.850 motion, Petitioner argued defense counsel was ineffective for failing to either withdraw from his case due to the conflict created by Petitioner's filing the motion to dismiss counsel, or set a hearing on his motion (Ex. K at 15–17).  The state circuit court denied this claim on the ground that the record demonstrated the trial court heard Petitioner's motion on August 4, 2005 (*id.* at 72).

Petitioner has not come forward with clear and convincing evidence that refutes the state court's factual finding that the trial court heard his motion on August 4, 2005.  Therefore, that finding is presumed correct.  Additionally, the court's finding is supported by the record.  The record

shows that Petitioner had several criminal cases pending at the same time in Bay County, and pre-trial proceedings in those cases were held at the same time (*see* Ex. B at 13, 14, 24, 25, 27, 28, 29, 33, 37, 38, 40, 41, 43, 44, 4,5 46, 47, 48, 50).  Petitioner was represented by the same counsel, Attorney Sandra Atkins, in all of his criminal cases (*id.*).  On July 20, 2005, Petitioner filed a pro se motion to dismiss counsel (*id.* at 34–36).  The court clerk's minutes show that on August 4, 2005, a trial was held in Case No. 04-575, and pre-trial proceedings were conducted in all of Petitioner's other cases, including this one (Ex. B at 37, 38; Ex. K at 86–87).  During the August 4 proceedings, the trial court heard Petitioner's motion to dismiss counsel and denied it (Ex. K at 86–87).  The record shows that the court inquired of Petitioner as to whether he wished to represent himself, and Petitioner stated he did not (*id.*).

Based upon this record, Petitioner has failed to show that counsel performed deficiently or that he was prejudiced by counsel's alleged error.[13]  Therefore, the state court's denial of his ineffective assistance of counsel claim was not based upon an unreasonable determination of the facts, nor was it an unreasonable application of <u>Strickland</u>.

Moreover, with regard to Petitioner's unexhausted claim that defense counsel was ineffective for failing to request a <u>Faretta</u> hearing, and his related claim that the trial court committed constitutional error by failing to conduct one, his claims are without merit notwithstanding his failure to exhaust.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  In <u>Faretta v. California</u>, 422 U.S. 806, 831–32, 95 S. Ct. 2525, L. Ed. 2d 562 (1975), the Supreme Court held that the Sixth Amendment "grants to the accused personally the right to make his defense."  Unlike the criminal defendant's right to counsel, which is in effect until waived, the right to self-representation is not effective until affirmatively asserted.  A defendant should be permitted by a court to represent himself only when he "knowingly and intelligently" relinquishes his right to counsel and makes a "clear and unequivocal" assertion of his right to self-representation. 422 U.S. at 835.  When a defendant indicates a desire to proceed without

---

[13] Petitioner did not allege circumstances showing an actual conflict of interest, that is, that this was a case of concurrent, multiple representation of co-defendants by defense counsel.  Therefore, he must demonstrate prejudice from counsel's alleged failure to schedule a hearing on this motion.  *See* <u>Hunter</u>, 395 F.3d at 1201–02.

counsel, the court should make him "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." 422 U.S. at 835 (internal quotations and citation omitted); *see also* Patterson v. Illinois, 487 U.S. 285, 298, 108 S. Ct. 2389, 2398, 101 L. Ed. 2d 261 (1988).

The Eleventh Circuit held that the right to counsel "is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does 'not attach unless and until it [i]s asserted.'" Stano v. Dugger, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc) (quoting Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir.1986)).   Waiver of the right to counsel and invocation of the correlative right to self-representation is no simple matter, however, and two requirements must be met.   First, the defendant must "clearly and unequivocally" assert his desire to represent himself thus waiving his right to counsel.   Second, the court must determine that the defendant has made this election "knowingly and intelligently."   However, to invoke his Sixth Amendment right under Faretta, a defendant must unambiguously state his request to represent himself, either orally or in writing, so that no reasonable person can say that the request was not made.   Dorman, 798 F.2d at 1366. Because of the gravity of the accused's decision, his request to proceed pro se must be clear and unequivocal.   Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) (defendant did not clearly and unequivocally request to represent himself and waive counsel where defendant seemingly requested to proceed pro se, but clarified the nature of his request by explaining that he essentially wished to act as co-counsel) (citations omitted); *see also* Stano, 921 F.2d at 1145 (Faretta inapplicable where defendant did not assert or even "faintly request" right to self-representation, and his conduct showed that he never envisioned representing himself).

Once there is a clear assertion of the right to self-representation, the court should conduct the Faretta hearing.   Raulerson v. Wainwright, 732 F.2d 803, 808 (11th Cir. 1984).   Indeed, "[t]he ideal method of assuring that a waiver of counsel is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation."   United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing Strozier v. Newsome, 926 F.2d 1100, 1104 (11th Cir. 1991) ("Strozier II")).   This helps to establish that the defendant unambiguously has chosen to represent himself.   Cross, 893 F.2d at 1291.   "While a

pretrial hearing is preferred, it is not required. . . . The absence of a hearing will not give rise to a violation of the Sixth Amendment right to counsel in the 'rare cases [where] the record may support a waiver.'"  Cash, 47 F.3d at 1088 (quoting United States v. Fant, 890 F.2d 408, 409 (11th Cir. 1989) (per curiam)).

In the instant case, Petitioner does not allege he asserted his right to self-representation; indeed, he concedes he told the trial court he did not wish to represent himself in the criminal proceedings (*see* doc. 17 at 8–10).  Therefore, the trial court was not required to conduct a Faretta hearing, and defense counsel had no basis for requesting one.  *See* Raulerson, 732 F.2d at 808. Additionally, to the extent Petitioner argues that Faretta mandates the procedure that must be followed when a defendant seeks to discharge appointed counsel, he misreads Faretta.  Faretta does not establish the procedure to be followed in such cases; it mandates only the procedure that must be followed in cases where a defendant expresses a desire to represent himself.  Further, this court has found no authority for extending the holding of Faretta to apply to cases where a defendant requests discharge of counsel but does not express a desire to represent himself.  Therefore, Petitioner failed to show that defense counsel was ineffective for failing to request a Faretta hearing, or that the trial court committed constitutional error by failing to conduct one.

D.     Ground Four:  "Trial court erred by denying Judgement [sic] of Acquittal."

Petitioner contends the trial court erred by denying defense counsel's motion for judgment of acquittal, because the evidence was insufficient to convict him of any of the charges (doc. 1 at 15, 18–20).  Respondent asserts this claim was not presented to the state courts; therefore, it is unexhausted and procedurally barred (doc. 14 at 18).  In his reply, Petitioner concedes the claim was not exhausted and appears to abandon it (doc. 17 at 10).  Petitioner does not allege cause for his failure to exhaust the claim.[14]  Moreover, Petitioner has not shown he is entitled to federal review

---

[14] The court notes that Petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel based upon counsel's failure to raise this issue of trial court error on direct appeal (*see* Ex. O).  The state court denied the claim on the merits (Ex. P).  Even if Petitioner asserted ineffective assistance of appellate counsel as cause for his procedural default in this federal habeas proceeding, he would not succeed.  The record demonstrates that upon counsel's filing an Anders brief, Petitioner was given the opportunity to file, and did file, an initial brief on his own behalf (*see* Exs. G, H).  In his pro se initial brief, Petitioner raised two claims of trial court error, neither of which was the trial court's denial of the motion for judgment of acquittal (Ex. G).  Because Petitioner was provided an opportunity to raise the claim of trial court error on appeal, he cannot show that appellate counsel's failure to do so caused the procedural default.

of this claim through any other exception to the procedural bar.  Therefore, the claim should be denied as procedurally barred.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>11</u><sup>th</sup> day of October 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**